## Dunbar, et al. v. Gabbert, et al.

(Decided March 24, 1922.)

### Appeal from Adair Circuit Court.

Descent and Distribution—Action for Sale of Land and Distribution of Proceeds—Evidence.—In an action for the sale of land of a decedent and for a division of the proceeds, held that the trial court erred in declaring the land not susceptible of division, embracing something like 800 acres as it did and being worth $30,-000.00 or more, and the lower court is directed upon a return of the case to enter an order directing a division according to the interests, quantity and quality considered.

H. C. BAKER and L. C. WINFREY for appellants.

GORDON MONTGOMERY for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing

In 1905 W. Pink Dunbar died intestate the owner of and domiciled on a large and valuable tract of land on Green river in Adair county, Kentucky. He was survived by his widow and eight children. The widow departed this life in 1918. Some of the children reside on the farm, others in that vicinity, while yet others live in distant states. This action was commenced shortly after the death of the widow by Mrs. Cordia Gabbert, one of the daughters of Dunbar, and her husband, against J. V. Dunbar and the other Dunbar children for a sale of the real property belonging to the estate of W. Pink Dunbar and a distribution of the proceeds among the joint owners according to their interests. It was alleged in the petition that the lands were not susceptible of division without injury to the interests of the plaintiffs and the other joint owners, the averment being: "Plain-

tiffs state that the location of said lands and the topography thereof is such that it would be impracticable to divide same among the part owners thereof, and they state that same cannot be divided without materially impairing its value and the value of plaintiffs' interest therein, and they therefore ask that same be sold, but should the court be of the opinion that said lands can be divided among the part owners thereof without materially impairing its value or the value of plaintiffs' interest therein then they ask that same be divided. Copies of the deeds to W. Pink Dunbar by which he held said lands are filed herewith and made a part hereof.'' Before the bringing of the action one of the heirs, Sidney L. Dunbar, sold and conveyed his undivided eighth of the lands to his brothers, J. V. Dunbar and G. A. Dunbar. At a later date, and while the action was pending, G. A. Dunbar purchased and has become the owner of the shares of Gertrude Chelf (*nee* Dunbar), Thomas L. Dunbar and Ocella Dunbar. It therefore appears that G. A. Dunbar and J. V. Dunbar own three-fourths of the entire tract, while the appellee, Cordia Gabbert and another daughter, Mrs. Lula Squires, each owns one-eighth interest in said land. The two daughters asked and were decreed a sale of the entire tract of land for a division of the proceeds. The two sons owning three-fourths of the land sought to have a division of it in kind according to the interests of the several owners. For the plaintiff seeking a sale of the land nine witnesses testified; seven witnesses testified for the defendants in substance that the lands are susceptible of advantageous division. The tract is shown to contain a little more than 768 acres, lying along and near Green river. About 250 or 300 acres are bottom land, while the balance of the tract is hill or knob land. The public highway runs almost through the center of it but a little on the upland dividing the hills from the valley. On the farm are two residences, with other improvements. The evidence for the appellees, who seek to have a sale of the land, tends to prove that the bottom land is of different qualities, some of it being very rich, while other parts of it are thin, and some of it wet; that the hill lands are very steep and covered in part by very fine timber, the other parts being timbered but of less value; that there are no building sites on the tract save those two on which the houses now stand and one in the Tom field, which is off the main road but on

a neighborhood road, and one or two other places high up on the hill; that if the plaintiff's eighth of the land be laid off to her on either end of the tract there will be no suitable building site thereon, and if it should be laid off in the middle it would divide the lands of the two brothers who own three-fourths of the entire tract. For the appellants, who are resisting the sale of the land but asking to have it divided according to the interests of the joint owners, it is testified that the pike runs through the middle of the tract and the other roads running through different parts of the tract make every part of the land accessible, and that there are several suitable building sites; that the lands were originally in eight different tracts and were so purchased by decedent, W. Pink Dunbar; that there are very few persons in Adair county able to buy a farm of the size and value of this one; that it is reasonably worth thirty, forty or fifty thousand dollars; that the bottom land is susceptible of advantageous division into shares among the four owners according to their interests, and the highland can be subdivided in like manner to advantage; that they have lived and resided upon the farm and in that vicinity all their lives, and they do not want to be compelled to move.

On this evidence the trial court adjudged the lands indivisible and directed a sale of the whole and a division of the proceeds according to the interest of the several joint owners. From this judgment the two sons owning three-fourths of the land have appealed.

The law favors a division of land in kind rather than a sale in gross and a division of the proceeds. King v. King, 182 Ky. 665; Kirk v. Crutcher's Admr., 145 Ky. 52; Prewitt's Committee v. Hurt, 178 Ky. 528. It is contrary to our public policy to require a landowner to relinquish his title and take the value of his land in money against his will. Moreover, sound public policy favors and encourages the owning of homes by all citizens, and this policy can be advanced and promoted by division of large tracts of land into small farms of sufficient size and fertility to maintain a family in comfort.

Aside from the evidence it would be hard to believe that a tract of practically eight hundred acres of land, through which there were several roads, could not be advantageously divided among four joint owners. The evidence convinces us that it can be so divided with advantage to all of them. It is clear that an eighth of the

land will contain approximately ninety-five acres if all be of about the same quality, and part of the bottom and a part of the hill land can be taken to make up the share. If one-eighth of the bottom land be laid off it would not be too small to be of service, for if we reckon the whole of the bottom at two hundred and fifty acres each eighth would have in it somewhat more than thirty acres. The evidence shows that one-eighth of the land laid off, part from the bottom and part from the hill, would be equal to an average farm of Adair county in size, quality and value. It is further shown that there are very few persons in the county who would be able financially to buy a farm of such great value as the one in question if sold as a whole; that there would be very few bidders at such a sale. All these facts considered we are constrained to the opinion that the trial court erred in holding the land not susceptible of advantageous division. On return of the cause to the Adair circuit court the judgment will be set aside and in lieu thereof an order entered directing a division of the land among the four owners according to their interests, quality, quantity and value considered, the appointment of commissioners for that purpose, and for all orders and proceedings necessary to carry out the division and the vesting of title in the several claimants as their interests may appear.

Judgment reversed.