## Corbin et al. v. Manley et al.

June 19, 1942.

W. C. Hamilton for appellants.

John J. Winn and John Adair Richards for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE PERRY— Reversing.

G. W. Hardin died a citizen and resident of Bath county, Kentucky, the fee simple owner and in possession of a 51-acre farm and certain personal effects, which he willed to his three daughters and the three children of his predeceased son, Presley Hardin.

His will, which was thereupon duly probated and put to record, is in these words:

"I, G. W. Hardin, being of sound mind and feeble health and realizing the uncertainty of life

and the certainty of death do make and publish this my last will and testament, to-wit:

"First: I will that all my just debts and personal expenses be paid.

"Second: I will and bequeath unto my daughters Anna and Emma the farm on which I now live to have and to hold during their lives with all the personal property that I may have at my death.

"Third: I owe some money on a mortgage to Joseph L. McAllister for four hundred and twenty-five (dollars) on which I have paid one hundred and twenty dollars. My two daughters aforesaid are to pay off that with my other indebtedness with the use of my farm and what personal effects I may have and should they marry or die or break up keeping house then they may sell the farm and the proceeds to be equally divided between my three daughters and my deceased son's children, Anna and Emma Hardin and Amanda Manley and the children of my deceased son Presley Hardin and in said division in that event then my daughters, Anna and Emma Hardin, are to have the amount refunded to them that they may have paid on my debts, and the remainder to be divided equally between my four children or their legal heirs before named.

"In testimony whereof I have this day subscribed my name this the 9th day of December A. D. 1897."

Testator's family at the time of his death consisted of two spinster daughters, Anna and Emma Hardin, a married daughter, Amanda Hardin Manley, and three grandchildren, Ida Hardin, Lilly Hardin, and Clara Hardin (now Mrs. Clara Hardin Corbin), the children of his predeceased son, Presley Hardin.

Of these three grandchildren named in the will, Lilly Hardin died in May, 1913, unmarried and without leaving children or issue of her body and before the death of either Anna or Emma Hardin, named as life tenants in the will.

Ida Hardin Coyle died in December, 1936, intestate, without leaving children or bodily heirs and also before the death of the two named life tenants, who died in 1938 and 1940 respectively.

Clara Hardin Corbin, upon the death of her two sisters, intestate and without issue, became the sole owner of whatever interest in said farm was devised to the children of testator's predeceased son, Presley Hardin, as well as the owner of whatever said children of Presley Hardin may have inherited from their grandfather, G. W. Hardin, should he be adjudged to have died intestate as to any part of his estate under the construction given clause 3 of his will.

It is to be noted that testator by clause 2 of his will devised his farm, on which he was then living, with all his personal property to his two unmarried daughters, Anna and Emma Hardin, "to have and to hold during their lives." Also it is to be noted that by such devise, providing them a home and means of livelihood from its use for the period of their joint lives, testator's first consideration, clearly manifested by his language used, was to provide a home and means of self-support for the life period of his two unmarried daughters or the survivor of them. At the same time, realizing his parental obligation also owing his married daughter, Mrs. Amanda Manley, and the three children of his deceased son, Presley Hardin, yet mindful too that the circumstances and then conditions of life for his two unmarried daughters might change, testator added clause 3 to his will, by which he provided, after first therein reciting that he was then owing a mortgage debt of $305 to one Joseph McAllister, that these two daughters, to whom he was giving his farm for life, should pay that mortgage debt, together with any other debts that he might owe, out of or "with the use of my farm and what personal effects I may have" and further provided that should they thereafter "marry or die or break up keeping house," upon the happening of such contingency they might sell the farm, and in that event they were directed to first reimburse themselves out of its sale proceeds for any money spent by them in paying his debts and then divide the remainder of the proceeds equally between themselves, his married daughter, Mrs. Amanda Manley, and the three children of his deceased son, Presley Hardin.

It is to be noted that the words employed by testator in this third paragraph of his will are to the effect that upon the happening of any of the three contingencies named, his daughters, Anna and Emma Hardin, to whom he willed his farm for life, were given the privilege or

right, so conditioned, to sell the farm and divide or distribute in fee the remainder of its sale proceeds as directed, i. e., equally between his four children or their legal heirs.

Clearly the testator's intent, ascertainable from his use of the words "they may sell", was to give them the privilege or option, conditioned upon the happening of the contingencies named, of terminating their joint life estate in the farm by selling it and, after reimbursing themselves with the amount of his debts paid by them from the sale proceeds, to then divide equally the remainder "between his four children or their bodily heirs before named."

However, as the life tenants were by this provision of the will only authorized or privileged, rather than directed or required, to sell the farm in the event of the happening of any of the contingencies named, to-wit: of their marrying, or breaking up housekeeping, or, it would appear, upon their (or either of them) dying, and as they never elected to exercise this qualified right given them to sell the farm, but, on the other hand, elected to continue, for the entire period of their joint lives and that of the survivor, to live and make their home upon the farm devised them only for life, it must follow that upon their death and termination of the life estates devised them in the entirety of the farm, the remainder estate, or fee interests in testator's farm, passed under his will an one-half interest each to testator's surviving daughter, Amanda Manley, and to his granddaughter, Mrs. Clara Hardin Corbin, she being now the sole surviving child and heir at law of his deceased son, Presley Hardin.

It is our interpretation of the will that testator never intended to devise any interest to his unmarried daughters, Anna and Emma, in his farm other than a joint estate for life in its entirety, with the further qualified right to sell it upon the happening of any of the contingencies named, which right they never exercised.

However, it appears that testator's married daughter, Amanda Manley, did in 1903, together with her husband, Sam Manley, by her deed convey to James Corbin, now deceased, his heirs and assigns all the interest in her father's farm which she acquired under his will, her deed expressly reciting that "the interest in said land which is hereby conveyed is such interest as was devised

to aforesaid Amanda Manley by George W. Hardin by his will which is of record in the office of the clerk of the Bath county court.''

Thereafter her said grantee, James Corbin, died intestate, the owner of whatever interest he acquired in said farm under said deed, leaving surviving him as his only children and heirs at law the appellants, F. M. Corbin, Mrs. Elsie Webb, Thomas Corbin, Estella Smith and Zack Corbin.

Further it appears that Anna Hardin, one of the unmarried daughters named as one of the life tenants in the 2nd clause of his will, died testate in December, 1938.

By her will, which was duly probated, she devised all of her estate to her sister and joint life tenant, Emma Hardin, with remainder at her death to her sister, Mrs. Amanda Manley, and her children for their separate use and benefit.

Further it appears that in October, 1940, Emma Hardin, the other unmarried daughter and life tenant under the will of her father, G. W. Hardin, also died testate.

By her will she directed that all her debts and funeral expenses be paid, after which all the rest of her property of every kind and description was devised her sister, Mrs. Amanda Manley.

It further appears that in 1940, a few months before her death, the life tenant, Emma Hardin, who had survived her sister and joint life tenant, Anna Hardin, left the farm and went to visit or live with her married sister, Mrs. Amanda Manley.

Thereupon, the Corbin heirs claiming that the estates of the two life tenants had terminated by reason of the death of Anna and the alleged abandonment of the farm by Emma to visit her sister, constituting a ''breaking up keeping house'' and that therefore they were entitled to have set apart to them the undivided one-half interest in the farm which they had acquired through their father under the deed of Amanda Manley, in which claim they were opposed, they filed a suit in equity in the Bath circuit court against Emma Hardin and Mrs. Clara Hardin Corbin to have the farm sold, as being indivisible, and their interest in the proceeds set apart to them.

Following this a second suit was filed by Emma Hardin and Clara Hardin Corbin against Amanda Manley and the appellants, the Corbin heirs, seeking a construction of the will of G. W. Hardin; the deed of Amanda Manley to James Corbin and fixing and determining the nature and extent of the property of testator passing under his will and the deed and the takers thereof.

During the pendency of the actions, Emma Hardin died, when they were continued in the name of Clara Hardin Corbin.

An intervening petition was filed by the children of Amanda Manley, to which she filed answer, setting out the provisions of the wills of Anna and Emma Hardin devising their interests in the farm to her and also asking the construction of the will of G. W. Hardin and the wills of her two sisters, the deceased life tenants.

Upon submission the two actions were by agreement consolidated and considered together for the construction of the will of G. W. Hardin and the other instruments named.

The learned chancellor, upon consideration of the questions presented, adjudged, according to his construction of the will, the farm to be owned by the parties as follows: The appellants, the Corbin heirs, an 11-24 interest; the appellee, Clara Hardin Corbin, also an 11-24 interest; and the appellee, Amanda Manley, a 2-24 share.

Further the court held that all the adjudged interests were subject to their pro rata payment of the testator's $305 mortgage debt to the estates of Anna and Emma Hardin, which it is admitted was paid by them.

From this ruling the Corbin heirs appeal, complaining that the court erred in adjudging them only an 11-24 interest in the farm rather than the ½ interest they contend they acquired through the conveyance of Amanda Manley to their ancestor, James Corbin.

As we view this record, the controversy here presented is disposed of when we arrive at or ascertain the intention of testator as to what estates in the farm he meant, by the language he employed in clauses 2 and 3 of his will, to devise to his four children or their legal heirs.

We may assume it to be conceded, without citation of authority, that the fundamental rule as to the con-

struction of wills, which the learned chancellor sought to observe and apply, is that the intention of the testator, as gathered from his entire will, must prevail unless it be opposed to some positive provision of the will or some general principle of public policy. The entire will must be taken into consideration; each part and clause thereof must be read in connection with the other parts. And all technical rules of construction must give way before the intention of the testator, which governs whenever it can be fairly ascertained. Wickersham v. Wickersham, 174 Ky. 604, 192 S. W. 688; Whicker v. Strong, 258 Ky. 135, 79 S. W. (2d) 388.

Applying this rule to the whole will, it is apparent that the testator's prime purpose and dominant objective was, as stated supra, to provide a home for his two unmarried daughters by devising them the farm jointly in its entirety for their lives. His other daughter, Amanda Manley, was at the time he made his will married and he looked to her husband for her support and his son, Presley Hardin, was also then dead.

It follows, therefore, inasmuch as testator's two daughters, Anna and Emma Hardin, to whom life estates in his farm were given, regardless of whether or not any of the contingencies named in the will have ever occurred, have never elected to exercise such qualified right or option given them to terminate their life estates and accept in exchange therefor a smaller one-fourth fee in the proceeds derived from its sale, but continued to make their home on the farm, occupying and using same in its entirety, throughout their lives, that they acquired no fee interest in the farm, which makes any question as to what interest in the testator's estate his children might have acquired had the life tenants elected to exercise their right to sell the farm and distribute in fee its sale proceeds in the manner directed by the will moot, by reason of the provisions of said third clause of the will having become nugatory and of no effect through the failure of the life tenants to exercise the optional right of sale given them thereunder.

Further, the life tenants not having exercised the option given them of selling the farm, in which event they were to be refunded out of the farm sale proceeds the debts of the father paid by them, but having lived out their lives upon the farm, the remainder interest passed under the will to testator's daughter, Mrs. Aman-

da Manley, and the surviving daughter of his deceased son, Presley Hardin, free from the charge of repaying the $305 to Anna and Emma Hardin, or their estates.

Such being our view of the situation, that testator's unmarried daughters were given only life estates in the farm by clause 2 of his will and that they never saw fit nor elected to exercise the right or option given them by clause 3 of the will to terminate the life estates given them, by making sale of the farm and distributing its sale proceeds in fee among themselves and testator's other children or their heirs, it follows that the remainder interest in the farm passed upon the death of the two life tenants to testator's other surviving daughter, Amanda Manley, and his surviving grandchild, Clara Hardin Corbin, as by the will directed, or that upon the death of the life tenants, the remainder interests in the farm should pass under the will to his daughter, Amanda Manley, and the children of his deceased son, Presley Hardin, or their legal heirs.

The learned chancellor reached a different view as to what was the proper construction of clause 3 of the will, which was the basis of his holding that the appellants, Corbin heirs, took only an 11-24 interest in the farm, such holding resulting from his adjudging that the life tenants, Anna and Emma Hardin, took one-fourth remainder interests in the farm and that upon the death of Anna Hardin her interest passed in fee, subject to the life estate of Emma Hardin, 1-12 to Emma Hardin, 1-12 to Amanda Manley and 1-12 to the children of Presley Hardin and that this 1-12 remainder interest Emma Hardin received as heir at law of Anna Hardin passed to Amanda Manley under the will of her sister Emma, not under the will of her father, and therefore did not pass under the deed conveying the interest in her father's farm she had received under his will.

However, it is our conclusion that the chancellor erred in interpreting this clause of the will as vesting such remainder interests in the farm in the life tenants, in that, according to our view, the testator did not by clause 3 of his will, or anywhere in his will, devise the life tenants any remainder or other interests in the farm, but only joint life estates therein, which evidently testator deemed sufficient for making adequate provision for their life needs.

Such being our conclusion as to what was testator's intent and the proper construction of his will, in harmony therewith it follows that upon the death of the two life tenants, the remainder interest in testator's estate or farm descended to his surviving heirs at law, Amanda Manley and Clara Hardin Corbin, half and half alike, with the result that the appellants, Corbin heirs, took under the deed of Amanda Manley, conveying to their father, James Corbin, whatever interest in her father's farm, she acquired under his will, which was, as we conclude, an ½ interest in the farm.

Therefore it is our conclusion that to adjust the rights of the parties, it is necessary to reverse the judgment of the lower court, which is done, and the cause remanded with directions to enter a judgment in conformity herewith.

Whole court sitting.